1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>KENDALL ALSTON,<br><br>                    Defendant. | CASE NO. 22-CR-00066-LK<br><br>ORDER REGARDING<br>REMAINING MOTIONS IN<br>LIMINE |

## I.      INTRODUCTION

This matter comes before the Court on Defendant Kendall Alston's Motion to Exclude Expert Testimony from Stephen Knapp, Dkt. No. 34, and Motion to Exclude Evidence Re: Fentanyl Dangers and Deaths, Dkt No. 35. The Government plans to try Defendant before a jury for violations of the Controlled Substances Act and firearms offenses. *See* Dkt. Nos. 1, 14. As promised in the Court's previous Order, it now turns to these final two motions in limine. *See* Dkt. No. 59 at 1 n.1. The Court issues the following rulings, which may be revisited if necessary during trial.

## II.    DISCUSSION

Parties may move "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). But the Court enjoys "wide discretion in determining the admissibility of evidence," *United States v. Abel*, 469 U.S. 45, 54 (1984), and it may amend, renew, or reconsider its rulings in limine in response to developments at trial, *Luce*, 469 U.S. at 41–42.

The Court is generally guided by Federal Rules of Evidence 401 and 403. *See Houserman v. Comtech Telecomms. Corp.*, 519 F. Supp. 3d 863, 867 (W.D. Wash. 2021). The Court must first consider whether the evidence at issue "has any tendency to make a fact more or less probable than it would be without the evidence," and whether "the fact is of consequence in determining the action." Fed. R. Evid. 401. If so, the evidence is relevant and therefore generally admissible. *See* Fed. R. Evid. 402. But there are many exceptions to this general rule. The Court may, for example, exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Relevance and prejudice "are determined in the context of the facts and arguments in a particular case[.]" *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

### A.    Detective Stephen Knapp's Testimony

The Government intends to call Detective Stephen Knapp, a 14-year veteran of the Seattle Police Department, to testify about "common practices associated with drug dealing, including typical user and distribution quantities of narcotics, storage methods, drug distribution methods, [and] the connection between firearms and drug trafficking." Dkt. No. 49 at 2. Detective Knapp is now a Task Force Officer with the Federal Bureau of Investigation ("FBI"). *Id.* He has been assigned to Seattle Police Department's Pro-Active Narcotics Unit since 2015 and served as a Task

1  Force Officer with the Drug Enforcement Agency ("DEA") prior to working with the FBI. *Id.*

2  According to the Government, Detective Knapp has been involved in "thousands of narcotics

3  operations[.]" *Id.*

4        Defendant seeks to preclude Detective Knapp's testimony. He contends that it is

5  inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*,

6  509 U.S. 579, 592 (1993) because it is of limited or no help to the jury. Dkt. No. 34 at 3–4.

7  According to Defendant, certain aspects of Detective Knapp's testimony are irrelevant, even if

8  "fascinating in a sort of Discovery Channel way." *Id.* at 4. Defendant also seeks to preclude

9  Detective Knapp from testifying about whether fentanyl is a controlled substance under federal

10  law. *Id.* And, even if Detective Knapp's testimony is otherwise admissible, Defendant argues that

11  its probative value is "far outweighed" by its prejudicial effect. *Id.* at 5–6. The Court addresses

12  these arguments in turn.

13        1.   <u>Admissibility Under Rule 702 and *Daubert*</u>

14        An expert may testify based on his "scientific, technical, or other specialized knowledge"

15  if it "will help the trier of fact to understand the evidence," provided that the testimony rests on

16  "sufficient facts or data" and "reliable principles and methods," and the expert "has reliably applied

17  the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). The Court's role at

18  this stage is that of "gatekeeper," and at the gatekeeping stage the relevant inquiry is limited to

19  whether Detective Knapp's testimony "both rests on a reliable foundation and is relevant to the

20  task at hand." *Daubert*, 509 U.S. at 597.

21        a.   *Relevance*

22        Under Federal Rule of Evidence 702(a), expert testimony must "help the trier of fact to

23  understand the evidence or to determine a fact in issue." This requirement "goes primarily to

24  relevance" because testimony "which does not relate to any issue in the case is not relevant and,

ergo, non-helpful." *Daubert*, 509 U.S. at 591 (cleaned up). The Court finds that Detective Knapp's testimony meets this low bar. *See Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (noting that "[t]he relevancy bar is low" and requires "only that the evidence logically advances a material aspect of the proposing party's case" (cleaned up)).

A law enforcement witness may offer testimony, based on his training and experience, about the general practice of drug dealers to establish a defendant's modus operandi. *United States v. Woolard*, No. CR18-217-RSM, 2021 WL 2909160, at *2 (W.D. Wash. July 9, 2021). The Ninth Circuit has repeatedly approved such testimony "in appropriate cases[.]" *United States v. Irons*, 31 F.4th 702, 716 (9th Cir. 2022); *see also, e.g.*, *United States v. Nichols*, 786 F. App'x 624, 628 (9th Cir. 2019); *United States v. Anchrum*, 590 F.3d 795, 804 (9th Cir. 2009). Defendant acknowledges that expert testimony on criminal behavior is "sometimes admissible because it 'helps the jury to understand complex criminal activities,'" Dkt. No. 34 at 3 (quoting *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984)), but maintains that this case is different because it "involves no complex illegal activities that require expert guidance" and "[m]any of the topics" of Detective Knapp's testimony are "matters of common knowledge familiar to jurors," *id.*

This misses the mark for two reasons. First, modus operandi expert testimony is permitted even in cases that are not complex. *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244 (9th Cir. 1997). Defendant's distinction between complex and non-complex cases thus conflates degree of relevance with relevance. The controlling inquiry is not whether the jury can manage in the absence of Detective Knapp's testimony; rather, it is whether Detective Knapp's testimony will help the jury—to any degree—to understand the evidence or determine any fact in issue. *See* Fed. R. Evid. 702(a); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020), ("An expert's opinion may overlap with the jurors' own experiences or cover matters that are within the average juror's comprehension, so long as the expert uses some kind of specialized knowledge to place the

1    litigated events into context." (cleaned up)), *cert. denied*, 141 S. Ct. 2877 (2021). And second,

2    Defendant's contention that Detective Knapp's testimony is little more than common knowledge,

3    "at least for those who have read a newspaper, seen a movie, or watched television since 1980," is

4    an oversimplification. Dkt. No. 34 at 3 n.11. Detective Knapp's testimony is not so limited. As the

5    Government asserts, Detective Knapp plans to inform the jury about typical-user versus

6    distribution quantities of narcotics, storage methods, distribution methods, and the connection

7    between firearms and drug trafficking. Dkt. No. 49 at 2. Such information supplements lay

8    understandings about drug dealing and is a far cry from what is commonly known, *e.g.*, "that drug

9    deals are 'carried out' by exchanging money for drugs . . . and that drug dealers may accumulate

10   lots of cash or sometimes carry guns." Dkt. No. 34 at 3–4.

11          The Court therefore finds that Detective Knapp's testimony is generally relevant and will

12   help the jury understand the evidence or determine a fact in issue. *See* Fed. R. Evid. 702(a).

13                    b.    *Reliability*

14          Defendant does not challenge Detective Knapp's specialized knowledge, skill, experience,

15   training, or education. Nor does he claim that Detective Knapp's testimony is based on insufficient

16   facts or data, that it is the product of unreliable principles or methods, or that Detective Knapp has

17   not reliably applied his knowledge and experience to the facts of this case. *See* Fed. R. Evid.

18   702(b)–(d). The Court must, however, still make an explicit reliability finding to satisfy its

19   gatekeeping duty. *See Irons*, 31 F.4th at 716; *United States v. Valencia-Lopez*, 971 F.3d 891 898-

20   99 & n.6 (9th Cir. 2020).

21          An expert's opinion is reliable when it has "a reliable basis in the knowledge and

22   experience of the relevant discipline." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463

23   (9th Cir. 2014) (en banc) (cleaned up), *overruled on other grounds by United States v. Bacon*, 979

24   F.3d 766 (9th Cir. 2020) (en banc). The reliability inquiry is "flexible" and "should be applied with

a liberal thrust favoring admission." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) (cleaned up). In *Daubert*, the Supreme Court supplemented Rule 702's base requirements with optional "general observations" to aid district courts in assessing whether a proffered expert's testimony is reliable: (1) whether the theory or technique employed by the expert is generally accepted in the scientific community; (2) whether it has been subjected to peer review and publication; (3) whether it can be and has been tested; and (4) whether the known or potential rate of error is acceptable. 508 U.S. at 593–94. But "[t]hese factors are meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (cleaned up); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141–42 (1999) (the *Daubert* factors "neither necessarily nor exclusively appl[y] to all experts or in every case" and the district court has the "same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination") (emphasis in original).

Indeed, *Daubert*'s factors "simply are not applicable" to the kind of testimony that Detective Knapp plans to give, as the reliability of such testimony "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000); *see also Valencia-Lopez*, 971 F.3d at 898 ("*Daubert* and *Kumho Tire* may be harder to apply when the expert testimony is 'experience-based' rather than 'science-based.'"). And, as noted above, the Ninth Circuit has routinely upheld expert testimony based on law enforcement experience. *See Anchrum*, 590 F.3d at 804; *United States v. Murillo*, No. 16-CR-0113-JLR, 2016 WL 5792692, at *5 (W.D. Wash. Oct. 4, 2016) ("The type of testimony Detective Tomlinson will give—about criminal *modus operandi* derived

from his law enforcement experience—is often deemed admissible under Federal Rule of Evidence 702 as helpful to the trier of fact and reliable.").

The Court nonetheless lacks the ability to perform the reliability inquiry that Rule 702 mandates because it does not have sufficient information about whether Detective Knapp's testimony is "based on sufficient facts or data," whether his testimony "is the product of reliable principles and methods," and whether he "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d); *see Murillo*, 2016 WL 5792692, at \*5 (district court lacked sufficient information to conduct reliability inquiry and invited defendant to renew his challenge to the detective's testimony at trial when the detective's qualifications and reliability could be tested through voir dire). The parties do not contest that Detective Knapp possesses sufficient experience and knowledge to qualify as an expert. *See* Dkt. No. 49 at 2, 4 (explaining Detective Knapp's experience). "But the record contains no evidence as to why that experience, by itself, equals reliability for his testimony" and opinions—the precise contours of which remain undefined. *Valencia-Lopez*, 971 F.3d at 898; *see* Dkt. No. 49 at 2 (explaining what Detective Knapp will generally testify about).

The Government nonetheless contends that the Court can perform its gatekeeping duty without holding a pretrial *Daubert* hearing and "should elect to do so" here. Dkt. No. 49 at 3. Defendant has not requested a hearing. Although it is true that the Court is not required to hold a separate *Daubert* hearing, it must still fulfill its "unwavering gatekeeping obligation to determine the reliability of [Detective Knapp's] testimony." *Valencia-Lopez*, 971 F.3d at 899. How the parties wish to tackle this issue—either by voir dire at trial or at a pretrial hearing—is of little concern to the Court. But it must be done. *See United States v. Alatorre*, 222 F.3d 1098, 1105 (9th Cir. 2000) (district court satisfied its gatekeeping duty by permitting defendant to conduct a

1    "lengthy" voir dire at trial). The parties should come to the pretrial conference prepared to inform

2    the Court as to how they wish to proceed.

3         2.    <u>Relevance Challenges to Specific Portions of Detective Knapp's Testimony</u>

4         Defendant also challenges the relevance of several specific topics that Detective Knapp

5    will purportedly testify about. The Court addresses these in turn.

6         First, Defendant argues that evidence about how fentanyl is used or that it is addictive and

7    harmful is immaterial to the charged offenses. Dkt. No. 34 at 4. That may or may not be the case.

8    Detective Knapp's testimony about how fentanyl is used or that it is addictive and harmful will be

9    helpful to the jury to the extent that it makes any fact of consequence in this case more or less

10   probable. *See* Fed. R. Evid. 401. For example, as discussed below, testimony about the dangers of

11   fentanyl may be relevant to explain the manner in which law enforcement performed its

12   investigation and, eventually, how law enforcement handled the seized drugs. *Woolard*, 2021 WL

13   2909160, at *2. The addictiveness of fentanyl and how it is used could also be relevant to Count

14   3. *See, e.g.*, *United States v. Basham*, 268 F.3d 1199, 1206–07 (10th Cir. 2001) (a factor "that may

15   help in determining whether possession of a firearm furthers, advances, or helps forward a drug

16   trafficking offense might include . . . the type of drug activity that is being conducted"); *United*

17   *States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002) ("a gun could provide a defense against

18   someone trying to steal drugs or drug profits").

19        Defendant next contends that expert testimony on drug storage methods and locations of

20   drug storage is irrelevant. Dkt. No. 34 at 4. The Court disagrees. Such evidence speaks directly to

21   law enforcement's investigation into Defendant's alleged drug trafficking activities and is relevant

22   to the jury's assessment of whether he intended to distribute the fentanyl pills or keep them for

23   personal consumption. It may also be relevant to whether Defendant knew that what he possessed

24

1   or distributed was a controlled substance. The Court therefore finds that expert testimony about

2   drug storage methods and locations of drug storage is relevant.

3         Third, Defendant claims that testimony about code words or slang terms for drugs and drug

4   quantities is irrelevant because "no codes or specialized argot were used by anyone here." *Id.* He

5   likewise seeks to preclude evidence about how drug traffickers place property under the names of

6   others because, again, this practice "has nothing to do with the accusations" against him. *Id.* The

7   Court tends to agree with Defendant that, assuming these things are simply inapplicable in this

8   particular case, such testimony will not help the jury understand the evidence or otherwise

9   determine a fact in issue. Nonetheless, to the extent that this information provides relevant

10   background on law enforcement's handling of the investigation, it is relevant.

11         3.   <u>Legal Opinions and Ultimate Issue Testimony</u>

12         Defendant also argues that Detective Knapp should not be permitted to opine as to whether

13   fentanyl is a controlled substance under federal law because that calls for an impermissible legal

14   conclusion. *Id.* "An expert is not permitted to testify about legal conclusions because the law is the

15   province of the court." *Preston v. Boyer*, No. C16-1106-JCC-MAT, 2019 WL 5425342, at *3

16   (W.D. Wash. Oct. 23, 2019). Put differently, Detective Knapp cannot give an opinion as to his

17   legal conclusion, *i.e.*, an opinion on an ultimate issue of law. *Nationwide Transp. Fin. v. Cass Info.*

18   *Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). But "[a]n opinion is not objectionable just because

19   it embraces an ultimate issue." Fed. R. Evid. 704(a); *Mukhtar v. Cal. State Univ., Hayward*, 299

20   F.3d 1053, 1065 n.10 (9th Cir. 2002) ("It is well-established, however, that expert testimony

21   concerning an ultimate issue is not per se improper."), *overruled on other grounds by Bacon*, 979

22   F.3d at 770. Detective Knapp may therefore refer to the law in expressing his opinion without that

23   reference rendering the testimony inadmissible. *Hangarter v. Provident Life & Accident Ins. Co.*,

24   373 F.3d 998, 1017 (9th Cir. 2004) ("Indeed, a witness may properly be called upon to aid the jury

in understanding the facts in evidence even though reference to those facts is couched in legal terms." (internal citation and quotation marks omitted)). The Court expects the Government to appropriately limit Detective Knapp's testimony to avoid impermissible legal conclusions. To the extent that the issue arises at trial, Defendant may object.

        4.    <u>Rule 403 Challenge to Detective Knapp's Testimony</u>

Defendant last advances a Rule 403 challenge to Detective Knapp's testimony. He argues that modus operandi expert testimony is "very close to criminal profile evidence," will "dovetail with the accusations against [him]," and essentially "instruct[s] the jury on the facts needed to satisfy the elements of the offense," including his mental state. Dkt. No. 34 at 5–6. Defendant correctly notes that the Government may not employ a "drug courier profile" as evidence of his substantive guilt. *United States v. Baron*, 94 F.3d 1312, 1320 (9th Cir. 1996), *overruled on other grounds by United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007). And Detective Knapp may not "state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged[.]" Fed. R. Evid. 704(b).

But that is not the case here. Once again, the Ninth Circuit has repeatedly approved of modus operandi testimony. *See Anchrum*, 590 F.3d at 804; *Johnson*, 735 F.2d at 1202. It has likewise found that such testimony does not run afoul of Rule 704(b):

> Our caselaw has interpreted that rule much more narrowly than its text might indicate. Under our precedent, Rule 704(b) does not bar testimony supporting an inference or conclusion that a defendant does or does not have the requisite mental state, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.

*United States v. Hayat*, 710 F.3d 875, 901 (9th Cir. 2013) (cleaned up). Although the Court remains cognizant of the looming dangers to which Defendant points, the risk that unfair prejudice will actually materialize is not so high that it substantially outweighs the probative value of Detective

1  Knapp's testimony. *See* Fed. R. Evid. 403; *Hankey*, 203 F.3d at 1172 (noting that "[r]elevant

2  evidence is inherently prejudicial" and district courts must be "cautious and sparing" in applying

3  Rule 403 because its "major function is limited to excluding matter of scant or cumulative

4  probative force, dragged in by the heels for the sake of its prejudicial effect." (quoting *United*

5  *States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983))).

6  **B.     Fentanyl Dangers and Deaths**

7         The Court now turns to the final motion in limine. Defendant seeks to preclude all

8  "testimony, evidence, and argument concerning dangers and deaths caused by fentanyl" because

9  it is not relevant. Dkt. No. 35 at 1–2. He also argues that, even if relevant, this evidence "give[s]

10 rise to a substantial risk of prejudice" under Rule 403. *Id.* at 2. It appears that there will be no

11 dispute with respect to fentanyl deaths or other statistics. Although the Government intends to

12 introduce testimony from responding law enforcement officers "about the dangerousness of

13 fentanyl to explain the manner of conducting the investigation and the handling of the seized

14 fentanyl," it avers that it will not introduce "fentanyl statistics or death toll testimony." Dkt. No.

15 49 at 5. The Court will allow the Government to elicit testimony on the dangers of fentanyl as

16 related to drug trafficking practices, and as explanatory information related to law enforcement's

17 handling of the investigation and seized drugs.[1] *See Woolard*, 2021 WL 2909160, at *2.

18                                    **III.     CONCLUSION**

19         For the foregoing reasons, the Court DENIES without prejudice Defendant's Motion to

20 Exclude Expert Testimony from Stephen Knapp, Dkt. No. 34, and DENIES without prejudice

21 Defendant's Motion to Exclude Evidence Re: Fentanyl Dangers and Deaths, Dkt. No. 35.

22

23

24 [1] The Court finds that the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice so long as it is limited in accordance with the parameters set forth herein.

ORDER REGARDING REMAINING MOTIONS IN LIMINE - 11

1    Dated this 5th day of July, 2022.

2

3                                              Lauren King
                                               United States District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24